OPINION OF THE COURT — By the
How. POWHATTAN ELLIS.
On the trial below, a verdict was taken for the plaintiff, and the defendant, by his counse,l moved the court to set it aside and award a new trial.
1st. because the jury found a verdict for the plaintiff without'any evidence of due notice having been given to the endorser, of the protest of the bill, of exchange, upon which the action is founded.
2ndly, because the court suffered, improper evidence to go before the jury, in that, parole testimony was admitted to prove a protest, without accounting for the absence of the written notice. ,
3rdly, because the jury found for the plaintiff more than principal, interest and ten per cent damages.
4thly, because one of the jurymen left his room, and separated from his fellow-jurors, without permission of the court, and received papers from the opposite party, after the jury had retired to agree upon their verdict; and lastly, the jury separated before they agreed upon their verdict. Upon argument, the court below, doubting as to the law, refers the motion to this court for decision.
This was an action instituted by Fielder Offit, the endorser of a bill of exchange, drawn by Hartwell Vick, on Breedlove Bradford and Robinson of New Orleans, and made payable to the order of William Neevit Vick. When this cause was tried in the Superior Court of Warren County, the plaintiff’s counsel introduced H. Offit, a witness, to testify, that the bill had been dishonored, and regularly protested, and that the defendant had notice of it. It appears from the judge’s report, who tried the cause, that H. Offit swore he was in New Orleans when the protest was made for non payment, and left that place the next day on his way to Kentucky, that he fell in company with the endorser, who told him in conversation, that he had received the notice of the protest from *101 New-Orleans, and supposed he should have to provide for the payment of the bill. Upon this evidence, the counsel for the defendant urged upon the court the want of legal notice — for it was said, the original notice ought to be produced, or satisfactorily accounted for. — The court left it to the jury, from the evidence, whether notice had been received by defenr dant’s testator, and if so, was it received in a reasonable time. If they found those facts affirmatively, they ought to find for the plaintiff, otherwise, for the defendant. There was^a verdict for the plaintiff. — The bill 'upon which this suit was brought, may be considered in the nature of a foreign bill of exchange, and the parties to it will be entitled to the same rights, and subject to the same responsibilities, as if the drawers had resided in London or Amsterdam, at the time of the date of said bill, except so far as it relates to the recovery. We are not prepared to say at this time, whether in the present case, ten or twelve per cent damages should be allowed the holder of a dishonored bill, yet the weight of authority seems to place paper of this kind, upon the footing of an inland bill of exchange, consequently, only ten per cent damages in such cases can be recovered. To settle this point, is not material, as it does not fairly come before us. When a bill of exchange is drawn by one person on another, and made payable to A. B. or order, sixty days after date, for instancy, and endorsed in the usual manner, the holder of the bill should call at the usual hours of doing business, and present it for acceptance. If it should be accepted, he will, under like formalities, call upon the drawee, and demand payment before the expiration of the days of grace, and if payment is refused, he must have the bill protested, for non-payment, before the days of grace have expired, and on the very same day, if the mail has not. left, he must deposit a letter of notice in the post-office, directed to those on whom he intends to call for indemnity; and the reason of the law for this strictness is “That the parties from whom the holder receives the bill, may immediately call on those who are liable to him.” Chitty on bijls 16. And further, it is perfectly immaterial from whom the notice is received, provided it be brought home to the knowledge of the party, entitled to insist on a want of it. Shaw vs. Croft.
The objection .taken by defendant’s counsel in the second clause of the first reason, cannot be sustained, as we find evidence of the contents of a *102 notice may be given, without notice to produce the original. 2, Campbell 601.—6, Wheaton 104.
It was given in evidence, that the defendant acknowledged he had received notice of the protest of non-payment, and that he should in all probability have, to make provision to take it up. According to a well established principle of the law, “that courts will always favor the rights of the holder in such cases,” therefore it will not be going too far, in our estimation, to presume the acknowledgment of the endorser as tantamount to legal notice, until the contrary appears. We have no difficulty in acknowledging the doctrine contended for by the defendant’s counsel, that if a p'arty is not advised ofhis legal rights, and under an ignorance of the facts, pays money under an impression he was bound to do it, he may institute his action, and recover it back again — so if a drawer or endorser of a bill of exchange, which has been dishonored by the drawee, actually pays the amount to the holder, without having received notice, and not knowing the fact, he may maintain an action to recover it. Now if the defendant, or the person whom he represents, under an ignorance of the facts compromited any of his legal rights, by an acknowledement he had received notice of the protest of the bill of exchange from New Orleans , upon which he was sued, he certainly could havemáde it manifest, on the trial, and if he had made out a proper case, the court would have protected him, by instructing the jury they were to disregard his ac-knowledgements, which would have put the plaintiff to the proof of his written notice. The case of Lundy vs. Robinson, in 7, East, is not directly in point: “an indorsee, three months after a bill becomes due, demanded payment "of the indorser, who first' promised to pay it, if he would call again with the account, and afterwards said, that he had not regular notice; but as the debt was justly due, he would pay it, held to be a waiver of notice., But in this case, when the endorser acknowledged he had received notice of the protest, he did- not <positively promise to pay, but observed he supposed he should have to make provisions to pay it or take it up, which acknowledgement was sufficient to fix his liability and tantamount to promise to pay under the exception we have already stated. In the second and last place, it is agreed, that the verdict cannot stand, because one of the jurors separated from his fellows (¿after they *103 had retired to consider of their verdict) under the charge of a constable, asking for a paper or document which the jury wanted — which said paper went into the possession of the jury, as the deponent Richard Stockton, junr. believes.
Let us consider this reason in a two fold point of view. First, will the separation of the jury, after the charge of the court, and before the rendition of the verdict, avoid said verdict?
Secondly, If the jury receive a paper which was not given in evidence, at the instance of either party, and a verdict is given for said party, will the court award a new trial ?
Upon the first point, I find it is well said; “when the jurors depart from the bar, a bailiff ought to be sworn, to keep them together and not to suffer any to speak to them,” .3 Bacon’s Abridg. p. 768, title, juries, letter (G.) But, if after the departure they should feel any doubt in relation to the testimony submitted for their consideration, they may desire to hear one of the witnesses again, and it shall be granted, so he deliver his testimony in open court, and also they may desire to propound questions to the court for their satisfaction, and it shall be granted, so it be in open court-t-the qualifying words, “so it be in open court” seem to preclude the admissibility of any species of evidence, by any other means, other than that prescribed by the law already quoted. It was upon this principle, that the case of Metcalf and Dean was decided in Croke, Elizabeth 189. It was this “where the jury withdrew to confer about their verdict, one of the witnesses that was before sworn, on the part of the defendant, was called by the jurors, and he recited again his evidence to them, and they gave their verdict for the defendant, and complaint being made to the Judge of assize, of this misdemeanor, he examined the jury, who con fessed the matter, and that the evidence was the same in effect, that was given before, and this matter being returned upon the postea, the opinion of the court was, that the verdict was not good, and a venire facias de novo was awarded.
Although the facts made out by the showing of the plaintiff, in this motion, are not precisely analagous to the case cited, yet they are sufficiently strong to produce irresistable conviction upon our minds, that the jury acted imprudently and irregularly in their deliberations. Thoy were *104 imprudent in separating before they returned their verdict, because such acts are expressly forbidden by the law. “The jury must be kept together without meat, drink, fire or candles, till they are agreed,” unless the court should think proper to relax the severity of this rule, in the exercise of a sound discretion. See Coke Littleton 227, letter (B.) But if the jury were to take out papers, read in evidence in a suit at common law, without the permission of the Judge, and the verdict was in all other respects satisfactory, I would not disturb it. ft will be no excuse that a sworn constable attend the jury, when he separates from his fellows, unless it be under the permission of the court.
Note. — It will be perceived, that the court in this case, declined deciding the much litigated question, whether a bill drawn iu one State, upon a person residing in another átate, is a foreign or inland bill of exchange, although they intimate that the right of authority is in favor of regarding it as an inland bill. This intimation was certainly true at the date of this decision. The supreme court of New York, had positively decided that such a bill was an inland bill; Miller vs. Hackley, 5 Johnson. 375. The same opinion had been expressedby Tucker in his edition of Blackstone, 2. vol. 467 N. 22. There had been then no decision promulgated to the contrary, though an opposite opinion was expressed in Swift’s essay on bills, 291. The decision of Judge Washington has been published in 1829, declaringsuch bi\\Bforeign bills of exchange, 4 Nash, 148, 157. Lansdale, vs. Brown, and this decision has been recently sustained by the supreme court of the United States, 2. Peters, 586.
Upon the second point of the last question, we are equally clear. At common law, the jury could not take out evidence with them, submitted in the cause, unless it was done with the approbation of the Judge, and even then, it would be confined to letters patent, and under seal, and the exemplification of witnesses, in chancery, if dead, but not writings without seal, unless by-consent of parties, Coke Little. 411, Croke Elizabeth 411 — But we have a statute, passed the 10th December, 1811 in Turner’s Digest, page 186, courts, sec. 11, which says “papers read in evidence to the jury on the trial of any. cause, though not under seal, may be carried from the bar by the jury; so far as our statute relaxes the rigor of the common law rule, we are willing to go, but no farther.” ft has become indispensably necessary to the prompt and salutary administration of justice, that the law in regard to the duties of'jurors be strictly and’energetically carried into effect, otherwise instead of being the strongest pillar in the fabric of our social edifice, they will become the least servi-cable, and the most dangerous. Upon the two last reasons, as above considered,
Let the motion for a new trial be granted, and a venire facias de novo awarded.